UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**NATIONAL SOURCING, INC.**, PEDRO
L. VALDEZ,

      Plaintiffs,

vs.                                                                                                Case No.: 8:17-cv-01950-CEH-JSS

**STEPHEN R. BRACCIALE, ANGELUS
TAM, TEK SOURCE USA, INC., and
SAINT ANTON CAPITAL, LLC,**

      Defendants.
_____/

<u>**VERIFIED MOTION BY PLAINTIFF, NATIONAL SOURCING, INC., TO
DISQUALIFY COUNSEL FOR DEFENDANTS, GEENBERG TRAURIG, LLP**</u>

      COMES NOW, Plaintiff, NATIONAL SOURCING, INC. ("NATIONAL SOURCING"), by and through their undersigned counsel, pursuant to Rules 4-1.9, and/or 4-1.7 of the Rules Regulating the Florida Bar, and move to disqualify GREENBERG TRAURIG, LLP, GREGORY D. KEHOE, ESQ., DANIELLE S. KEMP, ESQ., and JOHN A. WIRTHLIN, ESQ., (hereinafter collectively "GREENBERG"), from representing the Defendants in this cause, and shows:

      1.      Plaintiffs, NATIONAL SOURCING, and PEDRO VALDEZ ("VALDEZ") bring claims in this action regarding, *inter alia*, a Promissory Note, Security Agreement, and Stock Pledge signed by VALDEZ, dated April 25, 2013, and purportedly in favor of Defendant, SAINT ANTON CAPITAL, LLC ("SAINT ANTON")  (Doc. 24).  Plaintiffs allege, amongst other allegations, that the Promissory Note, Security Agreement, and Stock Pledge, are unenforceable or otherwise unlawful as having been induced by fraud and as operating in violation of various federal laws, as well as subject to counterveiling or offsetting damages.  In more broad terms, this action involves a dispute between BRACCIALE as a former shareholder, and VALDEZ as the

current controlling shareholder of NATIONAL SOURCING, partly through the operation of the Shareholder Agreement relative to NATIONAL SOURCING, attached hereto in its initial form drafted in April of 2013, within the exhibit(s) described below.  The Shareholder Agreement initially prepared by GREENBERG and signed in or around 2014, is expressly described and cited in the Amended Complaint filed by Plaintiffs in this action.  (Doc. 24 at ¶ 24.)

2.	As set forth below, NATIONAL SOURCING has recently confirmed that GREENBERG represented NATIONAL SOURCING over a course of years generally, and specifically in connection with the Promissory Note, Security Agreement, Stock Pledge, and Shareholder Agreement at issue.

3.	On or about July 17, 2017, formal litigation was initiated by the Plaintiff, PEDRO VALDEZ ("VALDEZ"), as President, sole director, and majority shareholder of NATIONAL SOURCING, through an action filed in the Circuit Court in and for Hillsborough County, Florida (Case No. 17-CA-007866) against STEPHEN R. BRACCIALE ("BRACCIALE"), SAINT ANTON CAPITAL, LLC ("SAINT ANTON"), ANGELUS TAM, TEK SOURCE, USA, INC., and nominal defendant, NATIONAL SOURCING (hereinafter referred to as the "FIRST ACTION").  GREENBERG appeared for all the Defendants in the FIRST ACTION, and have appeared for all the same Defendants in this action.  VALDEZ dismissed the FIRST ACTION on August 16, 2017, NATIONAL SOURCING ultimately realigned with VALDEZ upon investigation of the claims, and the Plaintiffs collectively brought this action.

4.	The FIRST ACTION was initiated proximate to the termination of BRACCIALE as an employee of NATIONAL SOURCING.  Prior to the FIRST ACTION and termination of BRACCIALE, a substantial portion of NATIONAL SOURCING's records, and electronic mail were unilaterally held or controlled by BRACCIALE, ANGELUS TAM, and/or TEK SOURCE

USA, INC.  Accordingly, the direct conflict at issue was not immediately apparent to NATIONAL SOURCING's current management, but instead required forensic searches through consultants. As but a key example, the written communications below show that BRACCIALE himself communicated with GREENBERG directly regarding GREENBERG's representation of NATIONAL SOURCING.

       5.       On August 4, 2017, the state court presiding held an evidentiary hearing.  At said hearing, BRACCIALE testified as to representation by then GREENBERG attorney, WILLIAM L. DUNKER, ESQ. in connection with preparation of the Promissory Note, Stock Pledge, and Security Agreement, and dated April of 2013, which are the subjects of this action, as follows:

> "Q. Who prepared the loan documents?
>
>     A.  A lawyer.
>
> Q. Which lawyer?
>
>     A. Bill Dunker.
>
> Q. I'm sorry, Bill –
>
>     A. Dunker, D-u-n-k-e-r.
>
> Q. And who did he represent?
>
>     A. He represented -- well, I asked him to be a neutral party. I paid him.
>
> Q. You paid him individually?
>
>     A. I think I -- I don't know. I can't give you an honest answer to that.
>
> Q. And you asked him to not represent any particular party?
>
>     A. I asked him to prepare loan documents that we neutrally discussed with him.
>
> Q. When you structured the operating agreement for NSI to afford Mr. Valdez control so that that could then be shown to the United States government there was a lawyer involved. Yes?

> A. Mr. Valdez was involved as was the lawyer.
>
> Q. And who was the lawyer there?
>
> A. Mr. Valdez submitted those documents.
>
> Q. Who was the lawyer there?
>
> A. It was Bill Dunker.
>
> Q. Mr. Dunker did that as well?
>
> A. Yes.
>
> Q. And who did he represent in connection with those documents?
>
> A. NSI and Mr. Valdez in connection with those documents.
>
> Q. Has Mr. Dunker ever represented you in connection with any matter?
>
> A. Yes, in structuring the promissory note.
>
> Q. And isn't it true that the operating agreement, promissory note relationships were all about the same approximate time?
>
> A. I can't give you -- you know, there were a myriad of three or four different promissory notes, so I can't give you a specific answer."

A true and correct copy of an excerpt from the transcript of testimony BRACCIALE on August 4, 2017, is attached hereto as *Exhibit A*.

    6.    After the above described hearing, undersigned counsel for NATIONAL SOURCING, based partly on BRACCIALE's equivocating testimony above, requested copies of GREENBERG's files to the extent that GREENBERG represented NATIONAL SOURCING in connection with any given matter. To wit, undersigned counsel wrote to GREENBERG as follows:

    a.    On August 9, 2017, undersigned counsel for NATIONAL SOURCING wrote, "In view of Greenberg Traurig's representation of National Sourcing Inc., and

its shareholders, in all transactions described during testimony last Friday, we would also like to retrieve the entirety of the files kept by your office regarding those matters. My understanding is that those files are the property of National Sourcing, Inc." However, GREENBERG did not respond, and has not responded to date. A true and correct copy of electronic mail sent by undersigned counsel is attached hereto as *Exhibit B.*

  b. Again on August 17, 2017, undersigned counsel for NATIONAL SOURCING wrote, "we have not received a response as to obtaining a copy of NSI's files kept by Greenberg Traurig, whatever the contents may be. Please advise on this point." Yet again, GREENBERG did not respond, and has not responded meaningfully to date. A true and correct copy of electronic mail sent by undersigned counsel is attached hereto as *Exhibit C.*

GREENBERG's silence on the issue of NATIONAL SOURCING's files was then confounding, but belied that key information was and is being withheld. Though DUNKER was understood to have been employed with GREENBERG until at least some point around 2014, it was not then fully clear precisely what work GREENBERG had performed for NATIONAL SOURCING through DUNKER.

  7. Upon subsequent review of corporate records, the Shareholder Agreement for NATIONAL SOURCING executed by BRACCIALE and VALDEZ, and apparently effective in January of 2014, contained the following recital reflecting that DUNKER represented NATIONAL SOURCING in connection with at least that shareholder agreement:

> "The undersigned acknowledge and agree that Dunker Law PA and William L Dunker, Esq. (collectively, the ·"Attorney") have represented the Corporation in the preparation of this Agreement. While the Attorney has attempted to be fair and reasonable to all of the interests of the Shareholders and the Corporation, the Attorney has not acted as counsel for

any of the Shareholders. The Shareholders have been advised to consult with their own legal counsel and either have done so or have chosen not to do so after being so advised."

While this language suggested that GREENBERG may have represented NATIONAL SOURCING through DUNKER, DUNKER's dates of employment were unclear.  Further, in some measure, the provision was somewhat inconclusive as to the specific transactions and instruments at issue in this action, and GREENBERG had tellingly refused to respond to direct inquiries.  However, the true nature of the representation would later become clear.

8. During August of 2017, NATIONAL SOURCING's current officers and management were then not able to fully investigate their prior dealings and communications with GREENBERG.  As but one reason for the difficulty, NATIONAL SOURCING's web domain, and a substantial portion of its electronic mail records, were under the control of ANGELUS TAM of TEK SOURCE USA, INC.  A true and correct copy of the website registration for the web domain at "www.nationalsourcing.com" identifying ANGELUS TAM as the administrative contract is attached hereto as ***Exhibit D***.  On the other hand, the Plaintiffs, apparently through ANGELUS TAM's administrative access to NATIONAL SOURCING's bank accounts, reviewed, downloaded, and filed confidential bank account records, such as the following privileged check written to undersigned counsel:



9. In September of 2017, searches and forensic review of archived emails revealed the following email from GREENBERG to NATIONAL SOURCING, confirming that in 2013, GREENBERG actually prepared the revised and restated shareholder agreement for NATIONAL SOURCING, as well as the very same Promissory Note, Security Agreement, and Stock Pledge at issue in this action as follows:

> **From:** DunkerB@gtlaw.com
> **Sent:** Thursday, April 25, 2013 12:00 PM
> **To:** sbracciale@nationalsourcing.com
> **Cc:** backielk@gtlaw.com
> **Subject:** NSI Ownership Transfer Documents
> **Attachments:** Wolfson Satisfaction Release and Termination Agreement April 2013.doc; NSI Minutes of Special Shareholders and Directors Meeting April 2013.DOC; Pedro Valdez Promissory Note April 2013.doc; Pedro Valdez Security AgreementApril 2013.doc; Pedro Valdez Stock Pledge Agreement April 2013.doc; Revised and Restated NSI Shareholder Agreement April 2013.doc; Wolfson - Valdez Stock Purchase and Sale Agreement April 2013.doc; Wolfson Resignation April 2013.doc
>
> Steve, Per your direction, I have prepared the attached documents to effect the transfer of Wolfson's 51 shares of NSI to Pedro Valdez. Please review first the first document above entitled "Wolfson Satisfaction, Release and Termination Agreement". I have included in that agreement an additional confidentiality provision which you requested.
>
> Per your directions last night, the notes, etc are payable to you personally.
>
> It is my understanding that at the present time, the Board of NSI is made up of Wolfson and Valdez and that, after the stock sale, the Board will be composed of only Valdez. That is the way the documents are drafted. Let me know if you would like any changes.
>
> I have separated the resignation letter from the Board Minutes. Note that both Pedro (as final board member and sole shareholder) and Marc (as former Board Member and former shareholder) are to sign the Minutes. This reduces the possibility that Marc might contest the action in the future.
>
> Don't forget to fill in the blanks (i.e., the signatures, the dates and the amount of the severance payment).
>
> Do you want an employment agreement for Pedro? Let me know.
>
> Call with any questions.
>
> Bill Dunker
> Of Counsel
> Greenberg Traurig, P.A. | 625 East Twiggs Street, Suite 100 | Tampa, FL 33602
> Tel 813.318.5700 | Fax 813.318.5905 | Cell 813 494-0795
> DunkerB@gtlaw.com | http://www.gtlaw.com
>
> **GT GreenbergTraurig**
>
> Albany · Amsterdam · Atlanta · Austin · Boston · Chicago · Dallas · Delaware · Denver · Fort Lauderdale · Houston · Las Vegas · London* · Los Angeles · Mexico City + · Miami · New Jersey · New York · Orange County · Orlando · Palm Beach County · Philadelphia · Phoenix · Sacramento · San Francisco · Shanghai · Silicon Valley · Tallahassee · Tampa · Tel Aviv^ · Tysons Corner · Warsaw~ · Washington, D.C. · White Plains
> *Operates as Greenberg Traurig Maher LLP   +Operates as Greenberg Traurig, S.C.   ^A Branch of Greenberg Traurig, P.A., Florida, USA   ~Operates as Greenberg Traurig Grzesiak sp.k. Strategic Alliance with an Independent Law Firm
> Milan · Rome
> PLEASE CONSIDER THE ENVIRONMENT BEFORE PRINTING THIS EMAIL.

A true and correct copy of the above electronic mail from GREENBERG on April 25, 2013, together with the attachments thereto, is attached hereto as *Exhibit E*. The revised and restated shareholder agreement attached to the above message and transmitted by GREENBERG in April of 2013, contained the following revelatory recital:

Page 8 of 14

> "**The undersigned acknowledge and agree that Greenberg Traurig, P.A. and William L. Dunker, Esq. (collectively, the "Attorney") have represented the Corporation in the preparation of this Agreement**. While the Attorney has attempted to be fair and reasonable to all of the interests of the Shareholders and the Corporation, the Attorney has not acted as counsel for any of the Shareholders. The Shareholders have been advised to consult with their own legal counsel and either have done so or have chosen not to do so after being so advised." (Emphasis added.)

See *Exhibit E*.

10.   On October 12, 2017, a more in depth review of NATIONAL SOURCING's accounting data further revealed, and fully and finally confirmed, that it was indeed NATIONAL SOURCING that was invoiced and represented by GREENBERG in connection with precisely the same instruments that are the subject of this action. To wit, NATIONAL SOURCING's accounting records reflected the payments to GREENBERG in connection with preparation of the subject instruments in April of 2013, and at the other relevant times, as follows:

Report Date & Time : 10/13/2017 01:34 PM

National Sourcing, Inc
3415 East Frontage Road
Suite B
Tampa, FL, 33607

Vendor History Report

| Voucher # | Vendor Inv No | Po No | Inv Date | Inv Amt | Dis Amt | Payment ID | Paid Amt | Check Amt | Check No | Chk Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Vendor Name | Greenberg, Traurig, PA | | | | Vendor ID | Gtrau | | | | |
| 59 | 3126611 | | 6/7/2012 | 8,376.50 | | 213 | 8,376.50 | 8,376.50 | 2549 | 6/7/2012 |
| 115 | 20120703 | | 7/17/2012 | 14,000.00 | | 268 | 14,000.00 | 14,000.00 | 2601 | 7/17/2012 |
| 277 | 3250218 | | 9/7/2012 | 310.00 | | 393 | 310.00 | 310.00 | 5017 | 9/21/2012 |
| 311 | 3267489 | | 9/30/2012 | 2,461.00 | | 433 | 2,461.00 | 2,461.00 | 5055 | 10/19/2012 |
| 356 | 3284813 | | 11/2/2012 | 310.40 | | 494 | 310.40 | 310.40 | 5113 | 11/19/2012 |
| 386 | 0935848.010300 | | 11/30/2012 | 269.50 | | 535 | 269.50 | 269.50 | 5151 | 12/13/2012 |
| 138 | 3402035 | | 4/30/2013 | 5,082.00 | | 196 | 5,082.00 | 5,082.00 | 5387 | 5/9/2013 |
| 494 | 3769824 | | 11/4/2014 | 528.00 | | 595 | 528.00 | 528.00 | 10711 | 11/12/2014 |
| | | | | 31,337.40 | | | 31,337.40 | | | |

A true and correct copy of the above accounting records is attached hereto as *Exhibit F*. As NATIONAL SOURCING's above records reflect, it was NATIONAL SOURCING that paid GREENBERG's invoice (numbered 3402035) on April 30, 2013, for GREENBERG's preparation of the same instruments that are the subject of this action from April 2013, and GREENBERG's

Page 9 of 14

other invoices as well. More simply stated, GREENBERG represented NATIONAL SOURCING in the very transactions at issue.

11. GREENBERG's representation of NATIONAL SOURCING substantially continued thereafter. As but one example, in October of 2014, counsel at GREENBERG wrote to NATIONAL SOURCING through BRACCIALE noting that GREENBERG had been further engaged to address "security clearance issues" relative to NATIONAL SOURCING's ability to operate as a government contractor. GREENBERG further clarified its representation of NATIONAL SOURCING stating that, "we were not retained to analyze issues regarding the company's eligibility for [Service-Disabled Veteran Owned Small Business] status . . . We will be pleased to look at those issues in greater detail if you wish." Through those communications, BRACCIALE requested return of NATIONAL SOURCING's files, NATIONAL SOURCING's access to which is now being denied. Thereafter, NATIONAL SOURCING paid GREENBERG, as set forth above, on or about November 4, 2014. A true and correct copy of electronic mail messages to and from GREENBERG in October of 2014, regarding the legal files and representation of NATIONAL SOURCING is attached hereto as *Exhibit G*.

12. Accordingly, BRACCIALE's testimony that he himself paid GREENBERG was false. BRACCIALE's testimony that GREENBERG acted as a "neutral" was false. Still further, GREENBERG, together with ANGELUS TAM, through NATIONAL SOURCING's own legal files, and otherwise, has been employing their access to NATIONAL SOURCING's own records to litigate against NATIONAL SOURCING in this cause and otherwise.

13. Decidedly, GREENBERG served as NATIONAL SOURCING's counsel pervasively in connection with the central subjects of this action, and otherwise for a term of years. Egregiously, GREENBERG now represents BRACCIALE in his demands adverse to NATIONAL

SOURCING, including a pervasive claim upon NATIONAL SOURCING's assets through the Security Agreement, and also represents TEK SOURCE USA, INC., in its attempt to collect hundreds of thousands of dollars in purported debts from NATIONAL SOURCING. Perhaps even more egregiously, GREENBERG and the attorneys of record for BRACCIALE have necessarily been well aware of all of the above, and omitted the above, at all relevant times.

**VERIFICATION BY MOVANT**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed on October 18, 2017.

_____
PEDRO L. VALDEZ, individually, and as Chief Executive Officer of NATIONAL SOURCING, INC.

**MEMORANDUM OF LAW**

Pursuant to Rule 4-1.9 of the Rules Regulating the Florida Bar:

"A lawyer who has formerly represented a client in a matter must not afterwards . . . represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent . . . use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known . . . reveal information relating to the representation except as these rules would permit or require with respect to a client."

The prohibition under the rule is unequivocal, as the comment to rule 4-1.9 states that "[w]hen a lawyer has been directly involved in a specific transaction, subsequent **representation of other clients with materially adverse interests clearly is prohibited**." (Emphasis added.) Further, pursuant to Rule 4-1.7 of the Rules Regulating the Florida Bar "a lawyer must not represent a client if . . . there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to . . . a former client."

Moreover, the Florida Supreme Court has held that where an attorney is adverse to a former client in connection with transactions in which the attorney provided representation to the former client, the arguments end there, as there is an "irrefutable presumption" of undue prejudice. "Matters are 'substantially related' for purposes of this rule if they involve the same transaction or legal dispute . . . A party seeking disqualification under rule 4–1.9 does not have to demonstrate actual prejudice to the former client as a result of the subsequent representation because **the existence of an attorney-client relationship gives rise to an irrefutable presumption that confidences were disclosed**." *Young v. Achenbauch*, 136 So.3d 575 (Fla. 2014). The prejudice to NATIONAL SOURCING brought about by NATIONAL SOURCING is real as a matter of fact, and irrefutable as a matter of law.

Where, as here, the conflict is direct and obvious, sanctions may include all disgorgement of all fees received by the conflicted and offending counsel. See, e.g., *The Florida Bar v. Rodriguez*, 959 So.2d 150 (Fla. 2007). Accordingly, NATIONAL SOURCING reserves the right to seek all remedies available at law or in equity against GREENBERG.

GREENBERG created the Shareholder Agreement, Promissory Note, Security Agreement, and Stock Pledge, for NATIONAL SOURCING, and through which GREENBERG now seeks to execute or foreclose upon all of NATIONAL SOURCING's assets. Such a conflict of interest is utterly impermissible, patently obvious on its face, and GREENBERG absolutely must be disqualified.

WHEREFORE, Defendant, NATIONAL SOURCING, INC., prays for entry of an order disqualifying GREENBERG TRAURIG, LLP, GREGORY D. KEHOE, ESQ., DANIELLE S. KEMP, ESQ., and JOHN A. WIRTHLIN, ESQ., from representing any party in this action, and for such other and further relief as this Honorable Court deems just and proper.

## CERTIFICATE OF CONFERRAL

Undersigned counsel wrote to GREENBERG on October 17, 2017, soliciting the position of GREENBERG and the Defendants regarding the relief requested by this motion. GREENBERG did not respond but are understood to oppose this motion based upon representations by GREENBERG during previous proceedings. GREENBERG has been aware of movant's intent to seek disqualification since as early as October 15, 2017. NATIONAL SOURCING is obliged to bring this motion as soon as possible, without awaiting further formal conferral, to avoid actual or apparent delay.

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of October, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

**Kevin L. Dees, Esquire**
Florida Bar No. 0015959
**Harry P. Teichman, Esquire**
Florida Bar No. 0157211
OLDER LUNDY & ALVAREZ
3014 West Palmira Avenue, Suite 202
Tampa, Florida 33629
Telephone No. (813) 254-8998
Facsimile No. (813) 839-4411
triallawyers@olalaw.com
*Counsel to Plaintiff, NATIONAL SOURCING, INC.*

*s/ Brent Britton*
**BRENT C.J. BRITTON, ESQ.**
Florida Bar No. 0012940
**LAUREN OREBAUGH, ESQ.**

Florida Bar No.0105451
**de la Peña & Holiday LLP**
400 North Tampa Street
Suite 2840
Tampa, FL 33602
PH: (813) 452-2006
FAX: (415) 268-8180
Primary email: *bcjb@dlphlaw.com*
Primary email: *lorebaugh@dlphlaw.com*
*Secondary email: lperez@dlphlaw.com*
*Counsel to Plaintiff, PEDRO L. VALDEZ*

and


*/s/ Scott R. Lilly*_____
**SCOTT R. LILLY, ESQ.**
Florida Bar No.0119245
*Lilly Law, PLLC, of counsel to*
**de la Peña & Holiday LLP**
400 North Tampa Street
Suite 2840
Tampa, FL 33602
*Primary email: srlilly@lilly-law.com*
*Secondary email: ezra@lilly-law.com*
*Counsel to Plaintiff, PEDRO L. VALDEZ*

and

*/s/ Brent Gordon*_____
**BRENT A. GORDON, ESQ.**
Florida Bar No.11902
*The Gordon Law Firm, P.A. of counsel to*
**de la Peña & Holiday LLP**
400 North Tampa Street
Suite 2840
Tampa, FL 33602
*Primary email: bg@thegordonfirm.com*
*Counsel to Plaintiff, PEDRO L. VALDEZ*